# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
CASE NO.

CARTIER INTERNATIONAL A.G. and
VAN CLEEF & ARPELS SA,

                  Plaintiffs,

vs.

THE INDIVIDUAL, BUSINESS ENTITY,
OR UNINCORPORATED ASSOCIATION
d/b/a THE E-COMMERCE STORE NAMES
IDENTIFIED ON SCHEDULE "A,"

                  Defendant.

_____/

## COMPLAINT FOR DAMAGES AND INJUNCTIVE RELIEF

Plaintiffs, Cartier International A.G. and Van Cleef & Arpels SA (collectively "Plaintiffs"),[1] hereby sue Defendant, the Individual, Business Entity, or Unincorporated Association doing business as the e-commerce store names identified on Schedule "A" hereto ("Defendant").  Defendant is promoting, offering for sale, selling, and distributing goods bearing and/or using counterfeits and confusingly similar imitations of Plaintiffs' respective trademarks within this district through various Internet based e-commerce stores operating under the e-commerce store names set forth on Schedule "A" hereto (the "E-commerce Store Names"). In support of their claims, Plaintiffs allege as follows:

## JURISDICTION AND VENUE

1.      This is an action for damages and injunctive relief for federal trademark counterfeiting and infringement, false designation of origin, common law unfair competition, and

---

[1] Plaintiffs are subsidiaries of Compagnie Financière Richemont SA, which is one of the world's leading luxury goods groups.

common law trademark infringement pursuant to 15 U.S.C. §§ 1114, 1116, and 1125(a), The All Writs Act, 28 U.S.C. § 1651(a), and Florida's common law. Accordingly, this Court has subject matter jurisdiction over this action pursuant to 15 U.S.C. § 1121 and 28 U.S.C. §§ 1331 and 1338. This Court has supplemental jurisdiction pursuant to 28 U.S.C. § 1367 over Plaintiffs' state law claims because those claims are so related to the federal claims that they form part of the same case or controversy.

2.      Defendant is subject to personal jurisdiction in this district because it directs business activities toward and conducts business with consumers throughout the United States, including within the State of Florida and this district through at least the Internet based e-commerce stores accessible and doing business in Florida and operating under its E-commerce Store Names. Alternatively, based on its overall contacts with the United States, Defendant is subject to personal jurisdiction in this district pursuant to Federal Rule of Civil Procedure 4(k)(2) because (i) Defendant is not subject to jurisdiction in any state's court of general jurisdiction; and (ii) exercising jurisdiction is consistent with the United States Constitution and laws.

3.      Venue is proper in this Court pursuant to 28 U.S.C. § 1391 since Defendant is, upon information and belief, a non-resident in the United States and engaged in infringing activities and causing harm within this district by advertising, offering to sell, selling, and/or shipping infringing products into this district.

## **THE PLAINTIFFS**

4.      Plaintiff Cartier International A.G. ("Cartier") is a public limited company organized and existing under the laws of Switzerland, having its principal place of business at Hinterbergstrasse 22, Postfach 61, 6312 Steinhausen, Switzerland.

5.      Plaintiff Van Cleef & Arpels SA ("Van Cleef") is a company organized and existing under the laws of Switzerland, having its principal place of business at 8 Route des Biches, CH-1752 Villars-sur-Glane, Switzerland.

6.      Goods bearing Plaintiffs' registered trademarks set forth below are offered for sale and sold through various channels of trade within the State of Florida, including this district, and throughout the United States. Defendant, through the advertising, sale, and offers to sell of counterfeit and infringing versions of Plaintiffs' branded products, is directly and unfairly competing with each Plaintiffs' economic interests in the United States, including within the State of Florida, and causing each Plaintiff irreparable harm within this jurisdiction.

7.      Like many other famous trademark owners, Plaintiffs suffer ongoing daily and sustained violations of their respective trademark rights at the hands of counterfeiters and infringers, such as Defendant herein, who wrongfully reproduces and counterfeits Plaintiffs' trademarks for the twin purposes of (i) duping and confusing the consuming public and (ii) earning substantial profits across their e-commerce stores.

8.      To combat the harm caused by the actions of Defendant and others engaging in similar conduct, each year Plaintiffs expend significant monetary resources in connection with trademark enforcement efforts, including legal fees, investigative fees, and support mechanisms for law enforcement. The exponential growth of counterfeiting over the Internet, including through online marketplace and social media platforms, has created an environment that requires companies, such as Plaintiffs, to expend significant resources across a wide spectrum of efforts in order to protect both consumers and themselves from the confusion and the erosion of the goodwill embodied in Plaintiffs' respective brands.

## **THE DEFENDANT**

9.      Defendant is an individual, business entity of unknown makeup, or unincorporated association who, upon information and belief, resides and/or operates in a foreign jurisdiction or redistributes products from the same or similar sources in that location. Defendant has the capacity to be sued pursuant to Federal Rule of Civil Procedure 17(b). Defendant directs its business activities toward consumers throughout the United States, including within this district, through the operation of, at least, its commercial Internet based e-commerce stores under the E-commerce Store Names.

10.     Defendant uses aliases in conjunction with the operation of its business including, but not limited to, those identified on Schedule "A."

11.     Defendant is directly and personally contributing to, inducing and engaging in the sale of counterfeit branded products as alleged herein.

12.     Defendant is the past and present controlling force behind the sale of products bearing and/or using counterfeits and infringements of Plaintiffs' trademarks as described herein using, at least, the E-commerce Store Names.

13.     Defendant directly engages in unfair competition with Plaintiffs by advertising, offering for sale, and selling goods bearing and/or using counterfeits and infringements of Plaintiffs' respective trademarks to consumers within the United States and this district through Internet based e-commerce stores using, at least, the E-commerce Store Names, as well as additional e-commerce store names or seller identification aliases not yet known to Plaintiffs. Defendant has purposefully directed some portion of its unlawful activities toward consumers in the State of Florida through the advertisement, offer to sell, sale, and/or shipment of counterfeit and infringing branded versions of Plaintiffs' branded goods into the State.

14.     Defendant has registered, established or purchased, and maintained its E-commerce Store Names. Defendant may have engaged in fraudulent conduct with respect to the registration of the E-commerce Store Names by providing false and/or misleading information during the registration or maintenance process related to its E-commerce Store Names. Defendant anonymously registered and/or maintained the E-commerce Store Names for the sole purpose of engaging in unlawful infringing and counterfeiting activities.

15.     Defendant will likely continue to register or acquire new e-commerce store names and other aliases, and related payment accounts, for the purpose of offering for sale and/or selling goods bearing and/or using counterfeit and confusingly similar imitations of Plaintiffs' trademarks unless preliminarily and permanently enjoined.

16.     Defendant's E-commerce Store Names, associated payment accounts, and any other alias e-commerce store or seller names used in connection with the sale of counterfeit and infringing goods bearing and/or using Plaintiffs' respective trademarks are essential components of Defendant's online activities and are one of the means by which Defendant furthers its counterfeiting and infringement scheme and causes harm to Plaintiffs.  Moreover, Defendant is using Plaintiffs' respective famous brand names and associated trademarks to drive Internet consumer traffic to its e-commerce stores operating under the E-commerce Store Names, thereby increasing the value of the E-commerce Store Names and decreasing the size and value of Plaintiffs' legitimate marketplace and intellectual property rights at Plaintiffs' expense.

<u>**COMMON FACTUAL ALLEGATIONS**</u>

<u>**Cartier's Business and Trademark Rights**</u>

17.     Cartier is the owner of all rights in and to the following trademarks, which are valid

and registered on the Principal Register of the United States Patent and Trademark Office (the

"CARTIER Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| CARTIER | 0,411,239 | January 9, 1945 | IC 014 - Precious-Metal Ware-namely, the following articles made, in whole or in part, of Precious Metals or Plated With the Same; Jewel Boxes, Fobs, Bracelets, Watch Bracelets And Buckles Therefore, not including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings. |
| *Cartier* | 0,411,240 | January 9, 1945 | IC 014 - Articles of Jewelry for Personal Wear and for Precious-Metal Ware-Namely, the Following Articles Made, in Whole or in Part, of Precious Metals or Plated with the Same-- viz, Jewel Boxes, Fobs, Bracelets, Watch Bracelets and Buckles Therefor, Not Including Watches, Cuff Links, Brooches, Earrings, Eyeglass Cases, Cigarette Lighters, Ash Trays, Envelope Openers, Wallets, Money Clips, Perfume Bottles, Desk Sets, Handbags, Key Chains, Finger Rings |
| CARTIER | 0,759,201 | October 29, 1963 | IC 014 - Watches and Clocks |
|  | 1,114,482 | March 6, 1979 | IC 014 - Articles of jewelry, watches |

| | | | IC 014 - Watches, Chronometers, Clocks |
|---|---|---|---|
| BALLON BLEU | 3,476,888 | July 29, 2008 | |
| *Cartier* | 4,178,047 | July 24, 2012 | IC 014 - Jewelry and watches |

The CARTIER Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the CARTIER Marks are attached hereto as Composite Exhibit "1."

18.     The CARTIER Marks have been used in interstate commerce to identify and distinguish Cartier's high-quality goods for an extended period of time. The CARTIER Marks are symbols of Cartier's quality, reputation and goodwill and have never been abandoned.

19.     Further, Cartier expends substantial resources developing, advertising and otherwise promoting the CARTIER Marks. The CARTIER Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

20.     Cartier extensively uses, advertises and promotes the CARTIER Marks in the United States in association with the sale of high-quality goods. As a result, the CARTIER Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning as an identifier of high-quality goods.

21.     Cartier has carefully monitored and policed the use of the CARTIER Marks and has never assigned or licensed the CARTIER Marks to the Defendant.

22.     Genuine goods bearing and/or using the CARTIER Marks are widely legitimately advertised and promoted by Cartier, its authorized distributors, and unrelated third parties via the Internet.  Visibility on the Internet, particularly via Internet search engines and social media

platforms, is important to Cartier's overall marketing and consumer education efforts. Thus, Cartier expends significant monetary and other resources on Internet marketing and consumer education, including search engine optimization ("SEO"), search engine marketing ("SEM"), and social media strategies. Those strategies allow Cartier and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Cartier brand and the goods sold thereunder, and the problems associated with the counterfeiting of Cartier's trademarks.

**Van Cleef's Business and Trademark Rights**

23.     Van Cleef is the owner of all rights in and to the following trademarks, which are valid and registered on the Principal Register of the United States Patent and Trademark Office (the "VAN CLEEF Marks"):

| Registered Trademark | Registration Number | Registration Date | Classes/Goods |
|---|---|---|---|
| Van Cleef & Arpels | 1,415,794 | November 4, 1986 | IC 014 - Jewelry and Watches |
| VCA | 1,584,572 | February 27, 1990 | IC 014 – Jewelry |
| VC A | 2,692,672 | March 4, 2003 | IC 014 – Jewelry; Watches |
| ALHAMBRA | 2,751,878 | August 19, 2003 | IC 014 - Precious Metal And Their Alloys And Products Made Thereof Or Coated Therewith Not Included In Other Classes, Namely, Jewelry, Horological And Chronometric Instruments, Namely, Watches And Watch Bracelets And  Necklaces, Jewelry Chains Of Precious Metal, Earrings, Jewelry Rings, Pendants, Ankle Bracelets, Cuff |

| | | | Links, Studs Made Of Precious Metal |
|---|---|---|---|
| VAN CLEEF & ARPELS | 2,936,247 | March 29, 2005 | IC 014 - Items Made Of Precious Metal, Namely, Rings, Bracelets, Earrings, Necklaces, Pendants, Charms, Brooches, Clips, Hairclips, Jewelry Boxes, Jewelry Cases, Watch Bracelets And Buckles; Jewelry, Watches And Clocks |
| ALHAMBRA | 3,489,019 | August 19, 2008 | IC 014 - Jewelry; Clock And Watch Making, Namely, Watches, Watch Bracelets |

The VAN CLEEF Marks are used in connection with the manufacture and distribution of high-quality goods in the categories identified above. True and correct copies of the Certificates of Registration for the VAN CLEEF Marks are attached hereto as Composite Exhibit "2."

24.     The VAN CLEEF Marks have been used in interstate commerce to identify and distinguish Van Cleef's high-quality goods for an extended period of time. The VAN CLEEF Marks are symbols of Van Cleef's quality, reputation and goodwill and have never been abandoned.

25.     Further, Van Cleef expends substantial resources developing, advertising and otherwise promoting the VAN CLEEF Marks. The VAN CLEEF Marks qualify as famous marks as that term is used in 15 U.S.C. §1125(c)(1).

26.     Van Cleef extensively uses, advertises and promotes the VAN CLEEF Marks in the United States in association with the sale of high-quality goods. As a result, the VAN CLEEF Marks are among the most widely recognized trademarks in the United States, and the trademarks have achieved secondary meaning as an identifier of high-quality goods.

27.     Van Cleef has carefully monitored and policed the use of the VAN CLEEF Marks and has never assigned or licensed the VAN CLEEF Marks to the Defendant.

28.     Genuine goods bearing and/or using the VAN CLEEF Marks are widely legitimately advertised and promoted by Van Cleef, its authorized distributors, and unrelated third parties via the Internet.  Visibility on the Internet, particularly via Internet search engines and social media platforms, is important to Van Cleef's overall marketing and consumer education efforts. Thus, Van Cleef expends significant monetary and other resources on Internet marketing and consumer education, including SEO, SEM, and social media strategies. Those strategies allow Van Cleef and its authorized retailers to educate consumers fairly and legitimately about the value associated with the Van Cleef brand and the goods sold thereunder, and the problems associated with the counterfeiting of Van Cleef's trademarks.

**Defendant's Infringing Activities**

29.     Defendant is promoting, advertising, distributing, offering for sale, and/or selling goods in interstate commerce bearing and/or using counterfeit and confusingly similar imitations of the CARTIER Marks and VAN CLEEF Marks (the "Counterfeit Goods") through at least the Internet based e-commerce stores operating under the E-commerce Store Names. Specifically, Defendant is using the CARTIER Marks and VAN CLEEF Marks (collectively, "Plaintiffs' Marks") to initially attract online consumers and drive them to Defendant's e-commerce stores operating under the E-commerce Store Names. Defendant is using virtually identical copies of Plaintiffs' Marks for different quality goods. Plaintiffs have used their respective trademarks extensively and continuously before Defendant began offering counterfeit and confusingly similar imitations of Plaintiffs' products.

30.     Defendant's Counterfeit Goods are of a quality substantially different than that of Plaintiffs' respective, genuine goods. Defendant is actively using, promoting and otherwise advertising, distributing, offering for sale and/or selling substantial quantities of its Counterfeit

Goods with the knowledge and intent that such goods will be mistaken for the genuine high-quality goods offered for sale by Plaintiffs despite Defendant's knowledge that it is without authority to use Plaintiffs' Marks.  The net effect of Defendant's actions is likely to cause confusion of consumers, at the time of initial interest, sale, and in the post-sale setting, who will believe all of Defendant's goods offered for sale in or through Defendant's e-commerce stores are genuine goods originating from, associated with, and/or approved by Plaintiffs.

31.     Defendant advertises its e-commerce stores, including its Counterfeit Goods offered for sale, to the consuming public using, at least, the E-commerce Store Names. In so doing, Defendant improperly and unlawfully uses Plaintiffs' Marks without Plaintiffs' permission.

32.     Defendant is, upon information and belief, employing and benefitting from substantially similar advertising and marketing strategies based, in large measure, upon an unauthorized use of counterfeits and infringements of Plaintiffs' Marks. Specifically, Defendant is using counterfeits and infringements of Plaintiffs' famous names and Plaintiffs' Marks to make its e-commerce stores selling unauthorized goods appear more relevant and attractive to consumers searching for both Plaintiffs' and non-Plaintiffs' goods and information online. Many of Defendant's e-commerce stores are indexed on search engines and compete directly with Plaintiffs for space and consumer attention in the search results. By its actions, Defendant is contributing to the creation and maintenance of an unlawful marketplace operating in parallel to the legitimate marketplace for Plaintiffs' genuine goods. Defendant is causing harm to Plaintiffs and the consuming public by (i) depriving Plaintiffs and other third parties of their right to fairly compete for space online and within search engine results and reducing the visibility of Plaintiffs' genuine goods on the World Wide Web, (ii) causing an overall degradation of the value of the goodwill associated with Plaintiffs' Marks by viewing inferior products in either the pre or post sale setting,

and (iii) increasing Plaintiffs' overall cost to market their respective goods and educate consumers about their brands via the Internet.

33.     Defendant is conducting and targeting its counterfeiting and infringing activities toward consumers and causing harm within this district and elsewhere throughout the United States.  As a result, Defendant is defrauding Plaintiffs and the consuming public for Defendant's own benefit.

34.     At all times relevant hereto, Defendant has had full knowledge of Plaintiffs' respective ownership of Plaintiffs' Marks, including their exclusive rights to use and license such intellectual property and the goodwill associated therewith.

35.     Defendant's use of Plaintiffs' Marks, including the promotion and advertisement, reproduction, distribution, sale and offering for sale of its Counterfeit Goods, is without Plaintiffs' consent or authorization.

36.     Defendant is engaging in the above-described unlawful counterfeiting and infringing activities knowingly and intentionally or with reckless disregard or willful blindness to Plaintiffs' rights for the purpose of trading on Plaintiffs' respective goodwill and reputations.  If Defendant's intentional counterfeiting and infringing activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed.

37.     Defendant's above identified infringing activities are likely to cause confusion, deception, and mistake in the minds of consumers before, during, and after the time of purchase. Moreover, Defendant's wrongful conduct is likely to create a false impression and deceive consumers into believing there is a connection or association between Plaintiffs' genuine goods and Defendant's Counterfeit Goods, which there is not.

38.     Defendant's payment and financial accounts, including but not limited to those specifically set forth on Schedule "A," are being used by Defendant to accept, receive, and deposit profits from Defendant's trademark counterfeiting and infringing and unfairly competitive activities connected to its E-commerce Store Names, and any other alias e-commerce store names being used and/or controlled by Defendant.

39.     Further, Defendant, upon information and belief, is likely to transfer or secrete its assets to avoid payment of any monetary judgment awarded to Plaintiffs.

40.     Plaintiffs have no adequate remedy at law.

41.     Plaintiffs are suffering irreparable injury because of Defendant's unauthorized and wrongful use of Plaintiffs' Marks. If Defendant's counterfeiting and infringing and unfairly competitive activities are not preliminarily and permanently enjoined by this Court, Plaintiffs and the consuming public will continue to be harmed while Defendant wrongfully earns a substantial profit.

42.     The harm sustained by Plaintiffs has been directly and proximately caused by Defendant's wrongful reproduction, use, advertisement, promotion, offers to sell, and sale of its Counterfeit Goods.

### COUNT I - TRADEMARK COUNTERFEITING AND INFRINGEMENT PURSUANT TO § 32 OF THE LANHAM ACT (15 U.S.C. § 1114)

43.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 42 above.

44.     This is an action for trademark counterfeiting and infringement against Defendant based on its use of counterfeit and confusingly similar imitations of Plaintiffs' Marks in commerce in connection with the promotion, advertisement, distribution, offering for sale, and sale of the Counterfeit Goods.

45.     Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks. Defendant is continuously infringing and inducing others to infringe Plaintiffs' Marks by using Plaintiffs' Marks to advertise, promote, offer to sell, and/or sell counterfeit and infringing versions of Plaintiffs' branded goods.

46.     Defendant's counterfeiting and infringing activities are likely to cause and are causing confusion, mistake, and deception among members of the trade and the general consuming public as to the origin and quality of Defendant's Counterfeit Goods.

47.     Defendant's unlawful actions have caused and are continuing to cause unquantifiable and irreparable harm to Plaintiffs and are unjustly enriching Defendant with profits at Plaintiffs' expense.

48.     Defendant's above-described unlawful actions constitute counterfeiting and infringement of Plaintiffs' Marks in violation of Plaintiffs' rights under § 32 of the Lanham Act, 15 U.S.C. § 1114.

49.     Plaintiffs have each suffered and will continue to suffer irreparable injury while Defendant is earning a substantial profit due to Defendant's above-described activities if Defendant is not preliminarily and permanently enjoined.

## COUNT II - FALSE DESIGNATION OF ORIGIN
## PURSUANT TO § 43(a) OF THE LANHAM ACT (15 U.S.C. § 1125(a))

50.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 42 above.

51.     Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of Plaintiffs' Marks have been widely advertised and offered for sale throughout the United States via the Internet.

52.     Defendant's Counterfeit Goods bearing, offered for sale, and sold using copies of Plaintiffs' Marks are virtually identical in appearance to Plaintiffs' genuine goods. However, Defendant's Counterfeit Goods are different in quality. Accordingly, Defendant's activities are likely to cause confusion in the trade and among consumers as to at least the origin or sponsorship of its Counterfeit Goods.

53.     Defendant has used in connection with its advertisement, offer for sale, and sale of its Counterfeit Goods, false designations of origin and false descriptions and representations, including words or other symbols and designs, which falsely describe or represent such goods and have caused such goods to enter into commerce in the United States with full knowledge of the falsity of such designations of origin and such descriptions and representations, all to Plaintiffs' detriment.

54.     Defendant has authorized infringing uses of Plaintiffs' Marks in Defendant's advertisement and promotion of its counterfeit and infringing branded goods.

55.     Additionally, Defendant is using counterfeits and infringements of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for space within organic and paid search engine and social media results. Defendant is thereby (i) depriving Plaintiffs of valuable marketing and educational space online which would otherwise be available to Plaintiffs, and (ii) reducing the visibility of Plaintiffs' genuine goods on the World Wide Web and across social media platforms.

56.     Defendant's above-described actions are in violation of Section 43(a) of the Lanham Act, 15 U.S.C. §1125(a).

57.     Plaintiffs have no adequate remedy at law and have each sustained injury caused by Defendant's conduct. Absent an entry of an injunction by this Court, Plaintiffs will continue to

suffer irreparable injury to their goodwill and respective business reputations, while Defendant is earning a substantial profit.

**COUNT III – COMMON LAW UNFAIR COMPETITION**

58.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 42 above.

59.     This is an action against Defendant based on its promotion, advertisement, distribution, offering for sale, and/or sale of goods bearing and/or using marks that are virtually identical to Plaintiffs' Marks in violation of Florida's common law of unfair competition.

60.     Specifically, Defendant is promoting and otherwise advertising, selling, offering for sale, and distributing goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks. Defendant is also using counterfeits and infringements of Plaintiffs' Marks to unfairly compete with Plaintiffs and others for (i) space in search engine and social media results across an array of search terms and (ii) visibility on the World Wide Web.

61.     Defendant's infringing activities are likely to cause and are causing confusion, mistake, and deception among consumers as to the origin and quality of Defendant's e-commerce stores as a whole and all products sold therein by its use of Plaintiffs' Marks.

62.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury because of Defendant's actions, while Defendant is earning a substantial profit.

**COUNT IV - COMMON LAW TRADEMARK INFRINGEMENT**

63.     Plaintiffs hereby adopt and re-allege the allegations set forth in Paragraphs 1 through 42 above.

64.     Plaintiffs are the respective owners of all common law rights in and to their respective Plaintiffs' Marks.

65.     This is an action for common law trademark infringement against Defendant based on its promotion, advertisement, offering for sale, and sale of its Counterfeit Goods bearing and/or using Plaintiffs' Marks.

66.     Specifically, Defendant is promoting and otherwise advertising, distributing, offering for sale, and selling goods bearing and/or using infringements of Plaintiffs' Marks.

67.     Defendant's infringing activities are likely to cause and are causing confusion, mistake and deception among consumers as to the origin and quality of Defendant's Counterfeit Goods bearing and/or using Plaintiffs' Marks.

68.     Plaintiffs have no adequate remedy at law and are suffering irreparable injury because of Defendant's actions, while Defendant is earning a substantial profit.

## **PRAYER FOR RELIEF**

69.     WHEREFORE, Plaintiffs demand judgment on all Counts of this Complaint and an award of equitable relief and monetary relief against Defendant as follows:

a.      Entry of temporary, preliminary, and permanent injunctions pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, and Federal Rule of Civil Procedure 65 enjoining Defendant, its agents, representatives, servants, employees, and all those acting in concert or participation therewith, from manufacturing or causing to be manufactured, importing, advertising or promoting, distributing, selling or offering to sell its Counterfeit Goods; from infringing, counterfeiting, or diluting Plaintiffs' Marks; from using Plaintiffs' Marks, or any mark or design similar thereto, in connection with the sale of any unauthorized goods; from using any logo, trade name or trademark or design that may be calculated to falsely advertise the services or goods of Defendant as being sponsored by, authorized by, endorsed by, or in any way associated with Plaintiffs; from falsely representing themselves as being connected with Plaintiffs, through

sponsorship or association, or engaging in any act that is likely to falsely cause members of the trade and/or of the purchasing public to believe any goods or services of Defendant are in any way endorsed by, approved by, and/or associated with Plaintiffs; from using any reproduction, counterfeit, infringement, copy, or colorable imitation of Plaintiffs' Marks in connection with the publicity, promotion, sale, or advertising of any goods sold by Defendant; from affixing, applying, annexing or using in connection with the sale of any goods, a false description or representation, including words or other symbols tending to falsely describe or represent Defendant's goods as being those of Plaintiffs, or in any way endorsed by Plaintiffs and from offering such goods in commerce; from engaging in search engine optimization strategies using colorable imitations of Plaintiffs' names or trademarks and from otherwise unfairly competing with Plaintiffs.

b.      Entry of a temporary restraining order, as well as preliminary and permanent injunctions pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority enjoining Defendant and all third parties with actual notice of an injunction issued by the Court from participating in, including providing financial services, technical services or other support to, Defendant in connection with the sale and distribution of non-genuine goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

c.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and this Court's inherent authority that, upon Plaintiffs' request, those acting in concert or participation as service providers to Defendant, who have notice of the injunction, shall cease hosting, facilitating access to, or providing any supporting service to any and all e-commerce stores, including but not limited to the E-commerce Store Names, through which Defendant engages in the promotion, offering for sale and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

d.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, any Internet marketplace website operators, administrators, registrars, and/or top level domain (TLD) Registries for the E-commerce Store Names who are provided with notice of an injunction issued by the Court, shall identify any e-mail address known to be associated with Defendant's E-commerce Store Names.

e.      Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. §1651(a), The All Writs Act, and the Court's inherent authority that upon Plaintiffs' request, the Defendant and the top level domain (TLD) Registry for each of the E-commerce Store Names, and any other e-commerce stores used by Defendant or its administrators, including backend registry operators or administrators, place the E-commerce Store Names on Registry Hold status for the remainder of the registration period for any such e-commerce store, thus removing them from the TLD zone files which link the E-commerce Store Names and any other e-commerce store name being used and/or controlled by Defendant to engage in the business of marketing, offering to sell, and/or selling goods bearing and/or using counterfeits and infringements of Plaintiffs' Marks, to the IP addresses where the associated e-commerce stores are hosted.

f.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority canceling for the life of the current registration or, at Plaintiffs' election, transferring the E-commerce Store Names and any other e-commerce store names used by Defendant to engage in its counterfeiting of Plaintiffs' Marks to Plaintiffs' control so they may no longer be used for unlawful purposes.

g.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act and the Court's inherent authority authorizing Plaintiffs to request any Internet search engines or service provider referring or linking users to any URL of the E-commerce Store Names, which are

provided with notice of the order, to permanently disable, de-index or delist all URLs of the E-commerce Store Names and/or permanently disable the references or links to all URLs of the E-commerce Store Names used by Defendant to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks, based upon Defendant's unlawful activities being conducted via the E-commerce Store Names as a whole and via any specific URLs identified by Plaintiffs.

h.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s) to assign all rights, title, and interest, to their E-commerce Store Names to Plaintiffs and, if within five (5) days of entry of such order Defendant fails to make such an assignment, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

i.      Entry of an order pursuant to 15 U.S.C. § 1116 and the Court's inherent authority, requiring Defendant, its agent(s) or assign(s) to instruct all search engines to permanently delist or deindex the E-commerce Store Names and, if within five (5) days of entry of such order Defendant fails to make such a written instruction, the Court order the act to be done by another person appointed by the Court at Defendant's expense, such as the Clerk of Court, pursuant to Federal Rule of Civil Procedure 70(a).

j.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court, shall permanently remove any and all listings and associated images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks via the e-commerce stores operating under

the E-commerce Store Names, and upon Plaintiffs' request, any other listings and images of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks associated with or linked to the same sellers or linked to any other e-commerce store names being used and/or controlled by Defendant to promote, offer for sale and/or sell goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

k.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority that, upon Plaintiffs' request, Defendant and any Internet marketplace website operators and/or administrators who are provided with notice of an injunction issued by the Court, shall immediately cease fulfillment of and sequester all goods of Defendant bearing and/or using Plaintiffs' Marks in its inventory, possession, custody, or control, and surrender those goods to Plaintiffs.

l.      Entry of an order requiring, upon Plaintiffs' request, Defendant to request in writing permanent termination of any E-commerce Store Names, messaging services, usernames, e-commerce stores, and social media accounts it owns, operates, or controls on any messaging service, e-commerce marketplace, or social media website.

m.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority, authorizing Plaintiffs to serve an injunction issued by the Court on any e-mail service provider with a request that the service provider permanently suspend the e-mail addresses that are used by Defendant in connection with Defendant's promotion, offering for sale, and/or sale of goods bearing and/or using counterfeits and/or infringements of Plaintiffs' Marks.

n.      Entry of an order pursuant to 28 U.S.C. § 1651(a), The All Writs Act, and the Court's inherent authority authorizing Plaintiffs to serve the injunction on the e-commerce store's registrar(s) and/or the privacy protection service(s) for the E-commerce Store Names to disclose

to Plaintiffs the true identities and contact information for the registrants of the E-commerce Store Names.

o.     Entry of an order requiring Defendant to account to and pay Plaintiffs for all profits earned from Defendant's trademark counterfeiting and infringing and unfairly competitive activities and that the profit award to Plaintiffs be trebled, as provided for under 15 U.S.C. §1117, or that Plaintiffs be awarded statutory damages from Defendant in the amount of two million dollars ($2,000,000.00) per each counterfeit trademark used and product type offered for sale or sold, as provided by 15 U.S.C. §1117(c)(2) of the Lanham Act.

p.     Entry of an award pursuant to 15 U.S.C. § 1117 (a) and (b) of Plaintiffs' costs and reasonable attorneys' fees and investigative fees associated with bringing this action.

q.     Entry of an order pursuant to 15 U.S.C. § 1116, 28 U.S.C. § 1651(a), The All Writs Act, Federal Rule of Civil Procedure 65, and the Court's inherent authority that, upon Plaintiffs' request, Defendant and any financial institutions, payment processors, banks, escrow services, money transmitters, e-commerce shipping partner, fulfillment center, warehouse, storage facility, or marketplace platforms, and their related companies and affiliates, identify and restrain all funds, up to and including the total amount of judgment, in all financial accounts and/or sub-accounts used in connection with the E-commerce Store Names, or other alias identification names used by Defendant presently or in the future, as well as any other related accounts of the same customer(s) and any other accounts which transfer funds into the same financial institution account(s), and remain restrained until such funds are surrendered to Plaintiffs in partial satisfaction of the monetary judgment entered herein.

r.     Entry of an order requiring Defendant, at Plaintiffs' request, to pay the cost necessary to correct any erroneous impression the consuming public may have received or derived

concerning the nature, characteristics, or qualities of Defendant's products, including without limitation, the placement of corrective advertising and providing written notice to the public.

      s.      Entry of an award of pre-judgment interest on the judgment amount.

      t.      Entry of an order for any further relief as the Court may deem just and proper.

DATED: January 29, 2024.      Respectfully submitted,

STEPHEN M. GAFFIGAN, P.A.

By:   **Stephen M. Gaffigan**
Stephen M. Gaffigan (Fla. Bar No. 025844)
Virgilio Gigante (Fla. Bar No. 082635)
T. Raquel Wiborg-Rodriguez (Fla. Bar. No. 103372)
Christine Ann Daley (Fla. Bar No. 98482)
Mallory Ruth Denzl (Fla. Bar No. 1050351)
401 East Las Olas Blvd., Suite 130-453
Ft. Lauderdale, Florida 33301
Telephone: (954) 767-4819
E-mail: Stephen@smgpa.cloud
E-mail: Leo@smgpa.cloud
E-mail: Raquel@smgpa.cloud
E-mail: Christine@smgpa.cloud
E-mail: MalloryR@smgpa.cloud

Attorneys for Plaintiffs

## SCHEDULE "A"

**[This page is the subject of Plaintiffs' Motion to File Under Seal.  As such, this page has been redacted in accordance with L.R. 5.4(b)(1)]**